GARDEN, JUDGE:
The claimant, Louis B. Varney, contends that in November, 1976, he was employed by the respondent, Department of Mental Health, to act as “clerk of the works” in respect to the construction of the Central Mental Health Complex located at or near Pocatalico, Kanawha County, West Virginia; that his contract specified that an annual salary of $16,000.00 would be paid to him, or the equivalent of $1,333.00 per month; and that he initiated his duties on November 29, 1976, and thereafter terminated his activities on April 25, 1977, by reason of that administration’s closing down of the project in late January of 1977. On the other side of the coin, the *424 respondents contend that a valid contract was never executed, nor was any purchase order ever issued authorizing the claimant’s services. Respondents further contend that the alleged services performed by claimant were minimal in nature and that the respondents received little value as a result of those services.
The facts surrounding the formation of the alleged contract are somewhat confusing. The claimant testified that on or about November 15, 1976, he conferred with the Department of Mental Health’s Deputy Commissioner, James R. Clowser, and at that time, the services to be performed by claimant and the salary to be paid were agreed upon. Claimant further testified that he, the claimant, was advised to contact Fred Parker, chief engineer of the Department of Mental Health. This conference was held two or three days later in Charleston. After some discussion concerning salary, the $16,000.00 annual figure was agreed upon, but because the necessary contractual forms were not available, claimant was told that they would be mailed to him and that he should contact Dan Smithson, the Department of Health’s chief engineer for the project, in order that their activities might be coordinated. Blank contract forms, three in number, were thereafter sent to claimant, who in turn signed them and returned all of them to the Department of Mental Health. The claimant testified that he began his duties on November 29, 1976, and continued until April 25, 1977.
According to the claimant, his principal duty was to inspect the work of the contractors to insure that the project was being constructed according to the plans and specifications and to submit daily reports as to the progress of the work to Mr. Smithson. It was admitted by the claimant that he did not report to the job site on a daily basis due to inclement weather, but on those occasions he would obtain a temperature reading from the Kanawha County Airport and submit a daily report reflecting that no work was done due to the weather. It should be noted that during the time frame in question, the claimant resided in Huntington.
Mr. Parker testified with respect to the contractual agreement and stated that in fact an agreement had been reached, but he was unable to recall the salary. He did recall sending the blank contract forms to the claimant, and after they were returned to him, signed by the claimant, he simply put them in the “mill” for futher processing. Mr. Smithson also testified on behalf of the claimant *425 that he had conferred with the claimant possibly once a week on the job site, and that, during the period in question, he had numerous phone conferences with the claimant, and the claimant had in fact submitted daily reports reflecting the activity or non-activity at the job site. Mr. Clowser, the final witness called on behalf of the claimant, testified that he had indeed agreed to employ the claimant at an annual salary of $16,000.00, and that he did recall signing a contract to that effect and sending the same through channels for the issuance of a purchase order. However, he was unable to recall whether or not a purchase order had ever been issued.
On behalf of the respondent, Miles Dean, the Commissioner of the Department of Finance and Administration, testified that his Department had no record of any contract entered into with the claimant, and that there could be no valid contractual arrangement until such an instrument was signed by his department and approved by the Attorney General. He further stated that the records in his office reflected that the contractors on this project had only fifty working days on the project site from the latter part of November, 1976, to the latter part of April, 1977. This would amount to about half the normal working days during this period of time.
The Court is of the opinion that the evidence fails to disclose that a valid contract was entered into between the claimant and the respondent, the Department of Mental Health. The record does clearly establish that the claimant began his duties under the impression that he had been legally employed, and that he did discharge his duties in a satisfactory manner. To deny the claimant relief would, in our opinion, unjustly enrich the State. Had the contract been executed in accordance with the statutes made and provided, the claimant would have been entitled to an award of $6,665.00; however, under the circumstances and as a result of less than maximum work on the part of the claimant during the period in question, we believe that an award of $4,250.00 would provide adequate compensation to him.
Award of $4,250.00.